UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT FITZMORRIS, an Idaho resident,<br><br>    Plaintiff,<br><br>    v.<br><br>AG MANUFACTURING & TECHNOLOGY, INC., an Iowa for-profit corporation,<br><br>    Defendant. | Case No. 3:24-cv-00196-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Plaintiff Scott Fitzmorris's Motion for Entry of Default Judgment. (Dkt. 8). Defendant AG Manufacturing & Technology, Inc. ("AMT") has not appeared in this case and did not file a response to Fitzmorris's motion. For the reasons below, the Court reserves ruling on Fitzmorris's motion and requests that Fitzmorris file a supplemental memorandum in support of his request for damages.

                                      **I.    BACKGROUND**

Fitzmorris is a farmer in Latah County, Idaho. (Dkt. 1 at ¶ 3.1). He was searching for a "metering system" that would work with his John Deere 1910 cart ("Cart"), when his employee, Brandon Selden, contacted AMT. (*Id.* at ¶ 3.1). AMT is a for-profit corporation incorporated in Iowa that advertises itself as a "precision-ag-tech platform" and "aftermarket AG machinery" company. (*Id.* at ¶ 1.2, ¶ 3.3). Selden spoke twice via phone with an AMT representative, Rusty Kordick, to discuss the details of AMT's "Intellidrive" system (the "System"), including its ability to work with Fitzmorris's Cart. Fitzmorris claims he relied upon Kordick's representations on

February 1, 2023, when he purchased the System for $20,357.00. (*Id.* at ¶ 3.14). Fitzmorris does not provide a contract in support of his motion, though he does submit his invoice from AMT. (Dkt. 8-1).

Fitzmorris alleges he did not receive any shipment from AMT until "on or about the middle" of May 2023, at which point he says the System was missing "significant parts" and was "unusable," among other issues. (Dkt. 1 ¶¶ 3.16-3.18). Selden contacted AMT about the delivery issues. (*Id.* at ¶ 3.19). Fitzmorris explains AMT delivered another set of parts in May 2023, but when the shipment arrived, it was still lacking parts or had unfinished or unacceptable parts. (*Id.* at ¶ 3.20). Fitzmorris explains that "in or about May or June," AMT sent Trey Baker to help Fitzmorris with the System's installation. (*Id.* at ¶ 3.22). According to Fitzmorris, Baker was able to get the System installed onto the Cart, but the System still had issues because it "had never been used on the type of cart owned by Mr. Fitzmorris." (*Id.* at ¶¶ 3.23-3.27).

Fitzmorris claims none of AMT's efforts resolved his issues with the System. (*Id.* at ¶¶ 3.22-3.31). Fitzmorris explained that he was told by Kordick that he would send Fitzmorris additional parts, but Fitzmorris never received them. Fitzmorris says these issues left him with no choice but to focus on fall seeding and mitigate the damages AMT caused. (*Id.* at ¶¶ 3.34-3.35).

Fitzmorris filed his Complaint on April 15, 2024, alleging breach of contract and unjust enrichment claims against AMT, and asserting diversity jurisdiction. (Dkt. 1). In his Complaint, Fitzmorris argues AMT's breach of their contract caused him to suffer damages and anticipated future damages in an amount "to be proven at trial." (*Id.* at ¶ 4.7). On April 30, Fitzmorris served the Summons and Complaint on AMT's registered agent, Joseph F. Leo. (Dkt. 5). AMT failed to respond, and the Clerk of the Court filed an entry of default on May 23. (Dkt. 7).

**MEMORANDUM DECISION AND ORDER - 2**

On July 29, 2024, Fitzmorris moved under Rule 55(b)(2) of the Federal Rules of Civil Procedure for a default judgment in the amount of $339,143.77. (Dkt. 8 at pp. 1-2). He argues he has proven damages in the requested amount—including damages for the purchase price of the System, spring seeding, attempting to make the System work, fall fertilizer application, fall seeding, a replacement machine, and lost crops—for a total of $339,143.77 in damages. (Dkt. 8-5 at pp. 3-4). He reserves his request for costs and attorney fees for a separate motion. (*Id.* at p. 13).

## II. LEGAL STANDARD

### A. Procedural Requirements

A plaintiff may request an entry of default against a defendant who fails to timely respond to the plaintiff's complaint. Fed. R. Civ. P. 55(a). The clerk of the court must enter the party's default upon the plaintiff's proof of service by affidavit or other documentation. *Id.* Where the defendant has not pleaded or defended in response to an action within twenty days of service of a complaint, no notice is required before entry of default. *Hawaii Carpenters' Trust Funds v. Stone*, 794 F.2d 500, 513 (9th Cir. 1986).

Once a default is entered, the plaintiff may seek entry of default judgment from either the clerk of court, under Rule 55(b)(1), or upon application to the court, under Rule 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Unless the party has appeared in the action, no party in default is entitled to notice of the motion for default judgment. *Wilson v. Moore & Assocs.*, 564 F.2d 366, 368 (9th Cir. 1977). The clerk enters a default judgment only if the sum is certain or can be made certain by computation; in all other cases, the court enters the default judgment. Fed. R. Civ.

P. 55(b)(1), (b)(2). Here, Fitzmorris requests the Court enter a default judgment under the Rule 55(b)(2).

**B.     Default Judgment Standard**

Whether to enter a default judgment is within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). As a part of this discretion, a court looks to several factors outlined in *Eitel v. McCool* (hereinafter "*Eitel* factors"), including (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim and the sufficiency of the complaint;[1] (3) the sum of money at stake in the action; (4) the possibility of a dispute concerning material facts; (5) whether the default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). A court considering a motion for default judgment accepts all factual allegations in the complaint as true, except those relating to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). A court may conduct a hearing before entering a default judgment but is not required to do so if the record reveals no issue of material fact. *Kashin v. Kent*, 457 F.3d 1033, 1043 (9th Cir. 2006).

---

[1]     The Ninth Circuit in *Eitel*, 782 F.2d at 1471, listed the "merits of the plaintiff's substantive claim" and the "sufficiency of the complaint" as two separate factors, though district courts usually analyze these factors together because of the factors' relatedness. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2002).

### III. ANALYSIS

**A. Jurisdiction**

To avoid a future challenge asserting a default judgment is void, "a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Here, the Court has diversity jurisdiction under 28 U.S.C. § 1332 because the opposing parties, Fitzmorris and AMT, are citizens of different states (Idaho and Iowa, respectively), and Fitzmorris requests $339,143.77 in damages, which exceeds the statutory amount in controversy requirement. (Dkt. 1 at ¶¶ 1.1-1.2; Dkt. 8-5 at p. 4).

This Court also has personal jurisdiction over Fitzmorris's claims because AMT acted in the forum state of Idaho. *See Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017). AMT directed its activities toward Idaho and thus availed itself of the privileges of operating in Idaho. *Id.* For example, AMT representative, Kordick, called Fitzmorris multiple times before Fitzmorris purchased the System; AMT shipped the System to Idaho; and Kordick traveled to Idaho to address Fitzmorris's concerns with the System. Fitzmorris's claims for breach of contract and unjust enrichment arise out of these activities—AMT's alleged failure to deliver the System as warranted. The Court's exercise of jurisdiction here comports with fair play and substantial justice, as AMT should have "reasonably anticipate[d] being haled into court" for its alleged activities. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984).

**B. Procedural Requirements**

On April 15, 2024, Fitzmorris filed the Complaint. (Dkt. 1). On April 30, the Complaint and Summons were properly served on AMT's registered agent, Leo, in Des Moines, Iowa. (Dkt. 5). Fitzmorris provides an affidavit of service to confirm this service. (*Id.*). Fitzmorris's

counsel also filed a declaration confirming Leo was registered with the Iowa Secretary of State as AMT's agent. (Dkt. 6-1).

Upon Fitzmorris's motion for entry of default under Rule 55(a), the Clerk of the Court entered default against AMT on May 22, 2024. (Dkt. 7). The Clerk did not provide notice of the entry of default to AMT because it had failed to defend or respond to Fitzmorris's Complaint. *See Hawaii Carpenters' Trust Funds*, 794 F.2d at 513. Fitzmorris then filed a motion for default judgment on July 29, under Rule 55(b)(2). (Dkt. 8). AMT has not made any appearance in this action, so the Court does not require Fitzmorris to notify AMT of his motion for default judgment. *See Wilson*, 564 F.2d at 368. Under Rule 55(c), Fitzmorris's request for relief in his motion for default judgment does not differ from the relief he requests in his Complaint, including his request for damages. (Dkt. 1; Dkt. 8). As of the time of this order, AMT has failed to respond to Fitzmorris's Complaint. Accordingly, the Court finds that Fitzmorris has satisfied the procedural requirements to move for default judgment under Rules 54 and 55.

### C.     Standard for Default Judgment

As discussed below, the Court considers the *Eitel* factors and finds they support a default judgment, except that the Court is unable to rule on Fitzmorris's motion absent further legal support for his argument that he is entitled to damages in excess of those damages AMT's breach of contract caused.

#### 1.     Prejudice to the Plaintiff

Fitzmorris argues he cannot recover damages unless the Court enters a default judgment. (Dkt. 8-5 at p. 5). The Court sees no mechanism other than a default judgment by which Fitzmorris can recover. *See United States v. Spear*, No. 2:22-CV-00439-BLW, 2024 WL 915007, at *2 (D.

Idaho March 4, 2024). This factor weighs in favor of default judgment because denying Fitzmorris's motion would leave him without recourse. *See Smith Roofing & Siding, LLC v. Smith*, No. 4:23-CV-00310-DCN, 2024 WL 1308983, at *3 (D. Idaho March 26, 2024) (citations omitted).

2.  **Merits of the Claims and Sufficiency of the Complaint**

The plaintiff's complaint must "state a claim on which [it] may recover" and include facts sufficient to show a plausible claim for relief. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2002) (citation omitted)*; Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *see also Indian Hills Holdings, LLC v. Frye*, 572 F. Supp. 3d 872, 886 (S.D. Cal. 2021). This Court accepts as true all Fitzmorris's allegations because of AMT's failure to respond. *See* Fed. R. Civ. P. 8(b)(6); *TeleVideo*, 826 F.2d at 917-18. The Court finds Fitzmorris sufficiently states both claims—breach of contract and unjust enrichment—which weigh in favor of granting default judgment.

Fitzmorris alleges his breach of contract claim under the Idaho Uniform Commercial Code ("UCC"). (Dkt. 1 at ¶ 4.1). In his motion for default judgment, Fitzmorris argues the parties formed an agreement for AMT's sale of the System. (Dkt. 8-5 at pp. 6-7). According to Fitzmorris, this agreement included express warranties and implied warranties of merchantability and fitness for a particular purpose, which AMT failed to honor. (*Id.* at pp. 7-8).

A transaction involving goods under the UCC must comply with the statute of frauds. Idaho Code § 28-2-201(1). A contract formed under the UCC for $500.00 or more is unenforceable "unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent

**MEMORANDUM DECISION AND ORDER - 7**

or broker." *Id*. Idaho law provides an exception to the statute of frauds, however, for a contract "with respect to goods for which payment has been made and accepted or which have been received and accepted." *See* Idaho Code § 28-2-201(3)(c).

Here, Fitzmorris neither submits a signed agreement in support of his motion for a default judgment nor alludes to any signed agreement. Fitzmorris, however, alleges he purchased the System on February 1, 2023, attaches an invoice as confirmation, and describes his receipt of the System. (Dkt. 1 at ¶ 3.14; Dkt. 8-1 at p. 10). Based on this evidence, the Court finds Fitzmorris's agreement with AMT is enforceable under the statute of frauds.

A seller's express warranties become a part of the bargain. *Keller v. Inland Metals All Weather Conditioning, Inc.*, 76 P.3d 977, 980-81 (Idaho 2003) (citing Idaho Code § 28-2-313(1)). Fitzmorris alleges that AMT advertises the system as compatible with John Deere carts, such as Fitzmorris's Cart (Dkt. 1 at ¶¶ 3.3-3.6), and that AMT specifically told him the System would work with his Cart. (*Id.* at ¶¶ 3.11-3.28). Fitzmorris also attaches an invoice containing an express warranty of one year on defective parts. (Dkt. 8-1 at p. 10). Fitzmorris thus alleges sufficient facts that AMT violated its express warranties. (Dkt. 1 at ¶¶ 3.16-3.33).

Additionally, the Idaho Code recognizes the implied warranty of merchantability, which requires a merchant's goods must: (1) "pass without objection in the trade under the contract description"; (2) be "fit for the ordinary purposes for which such goods are used"; and (3) be "adequately contained, packaged, and labeled as the agreement may require[.]" Idaho Code § 28-2-314. Here, AMT represented the System would work with Fitzmorris's Cart and would be easy to install. (Dkt. 1 at ¶ 3.12). Later, however, an AMT representative conceded the System had

never been used on the type of cart Fitzmorris owns. (*Id.* at ¶ 3.27). Fitzmorris thus alleges sufficient facts to show AMT breached its implied warranty of merchantability.

Because the Court concludes Fitzmorris has established a breach of an enforceable, express contract claim, it does not need to consider Fitzmorris's alternative claim for unjust enrichment. If a court finds an express agreement is enforceable, it is precluded from applying the equitable doctrine of unjust enrichment in contravention of the express agreement. *Thomas v. Thomas*, 249 P.3d 829, 836 (2011).

### 3. Possibility of a Dispute Concerning Material Facts

Upon entry of default, a court accepts all well-pleaded facts as true, except those relating to damages. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Fitzmorris's Complaint includes facts giving rise to his breach of contract claim. (Dkt. 1). His motion for default judgment includes affidavits, invoices, and reports supporting the claim. (Dkt. 8-5). Because AMT failed to respond to any of Fitzmorris's filings, there is no dispute of material fact. This factor therefore weighs in favor of granting default judgment for Fitzmorris.

### 4. Excusable Neglect

A court considers the possibility that a defendant's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1471-72. Here, Fitzmorris contacted AMT regarding the System before filing his Complaint in April 2024. (Dkt. 1). Fitzmorris's affidavit of service indicates that AMT's registered agent, Leo, received service on April 30. (Dkt. 5). Further, Fitzmorris submits AMT's "2024 Biennial Report" with the Iowa Secretary of State, which lists Leo as AMT's registered agent. (Dkt. 6-1). The Court has no information suggesting AMT has tried to contact Fitzmorris.

For these reasons, the record does not indicate AMT's default is attributable to excusable neglect. As a result, this factor weighs in favor of granting default judgment.

### 5. Favoring Decisions on the Merits

A court should decide cases upon the merits whenever possible. *Eitel*, 783 F.2d at 1472. This factor, however, is not dispositive. *PepsiCo*, 238 F. Supp. 2d at 1177. In some cases, a defendant's failure to answer makes a decision on the merits impractical, if not impossible. *Id.* AMT has failed to respond to Fitzmorris or make any appearance, which prevents the Court from considering the merits of Fitzmorris's claim for breach of contract. *Eitel*, 782 F.2d at 1472; *see also Smith Roofing & Siding, L.L.C.*, No. 4:23-CV-00310-DCN, 2024 WL 1308983, at *7. While general policy favors decisions on the merits, this factor is not a categorical rule, and AMT's failure to respond weighs in favor of granting default judgment.

### 6. Sum of Money at Stake

Notwithstanding that the Court finds these *Eitel* factors support granting a default judgment, the Court cannot find Fitzmorris is entitled to the amount of damages requested based on the current record. A court need not accept the alleged damages as accurate. Fed. R. Civ. P. 55(b)(2); *see Spear*, No. 2:22-CV00439-BLW, 2024 WL 915007, at *2. Under Idaho law, a nonbreaching party may recover damages so long as the damages are incidental to the contract and caused by the breach. *Suitts v. First Sec. Bank of Idaho, N.A.*, 713 P.2d 1374, 1381 (Idaho 1985). Consequential damages, however, are only recoverable for a breach of contract if those damages were reasonably foreseeable and the parties contemplated them at the time they made the contract. *Id.*; *Garcia v. Absolute Bail Bonds, LLC*, 389 P.3d 161, 167 (Idaho 2016). Further, "[l]ost profits are generally not recoverable in contract unless there is something in the contract that suggests that

they were within the contemplation of the parties and are proved by reasonable certainty." *Silver Creek Computers v. Petra, Inc.,* 42 P.3d 672, 677-78 (Idaho 2002).

In weighing the sum of money at stake, a court considers whether "the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal 2010) (citation omitted). Here, Fitzmorris claims purchase price damages are $20,357.00 but requests $339,143.77 in total compensatory damages. (Dkt. 8-5 at p. 4). Fitzmorris's alleged damages include: the $20,357.00 purchase price; $26,520.50 for a rental for spring seeding; $13,810.00 in labor costs for making the System work; $11,317.60 for a fertilizer application in Fall 2023; $7,216.00 in equipment rental; $18,399.92 for extra work for fall seeding; and $48,364.75 in costs to replace the System. (*Id.* at pp. 3-4). Additionally, Fitzmorris requests $193,158.00 in lost crop damages, which accounts for most of his damages. (Dkt. 8-5 at p. 4). In support of his crop damages, Fitzmorris submits the declaration and expert report of a certified professional agronomist, Gary W. Osteen, who opines that the System's delayed delivery caused Fitzmorris's crop losses and that loss was $193,158.00. (Dkt. 8-3 at ¶ 3, pp. 2-3).

Fitzmorris argues that "the amount sought . . . directly correlates to out-of-pocket damages and business losses" because of his issues with the System. (Dkt. 8-5 at p. 8). The Court does not question Fitzmorris actually incurred these costs and finds he has provided sufficient evidence of his loss. For example, in addition to Osteen's expert report opining on Fitzmorris's crop loss damages, Fitzmorris also provides several supporting exhibits, such as invoices and spreadsheets. (Dkt. 8-1). Fitzmorris, however, neither explains why AMT should have contemplated the consequential damages nor provides supporting authority that he is entitled to crop loss damages.

**MEMORANDUM DECISION AND ORDER - 11**

Although Fitzmorris has sufficiently documented his losses, whether he is entitled to recover all those losses as damages against AMT remains an open question. Fitzmorris has not provided any legal authority supporting his assertion he is entitled to consequential damages and lost profits. *See* Fed. R. Civ. P. 55(b)(2); *Spear*, No. 2:22-CV00439-BLW, 2024 WL 915007, at *2. Notably, Fitzmorris has not explained why he is legally entitled to the largest of these claims—$193,158.00 for lost crop damages—despite Idaho law limiting a claimant's ability to recover lost profit damages. Based on the record, the Court is unable to determine Fitzmorris's damages. Accordingly, the Court directs Fitzmorris to file a supplementary memorandum explaining his factual and legal basis for all the damages he seeks to recover against AMT.

**D.      Costs and Attorney Fees**

Under Federal Rule of Civil Procedure 54(d)(1) and District of Idaho Local Civil Rule 54.2, the Court may award costs to the prevailing party. Costs may include, *inter alia*, fees for printing, fees of the clerk, and fees for making copies of any materials obtained for use in the case. 28 U.S.C. § 1920. Under Local Rule 54.2(b), the party claiming right to allowance of attorney fees may file and serve a motion within fourteen days after entry of judgment, unless a court order provides otherwise. *Id.* Fitzmorris requests leave to file a motion under Local Rule 54.2(b) following the Court's default judgment. (Dkt. 8-5 at p. 13). Because the Court reserves its ruling on Fitzmorris's motion for default judgment, its grants Fitzmorris leave to request attorney fees following the Court's ruling.

## IV. ORDER

**IT IS ORDERED that:**

1. Fitzmorris's Motion for Default Judgment (Dkt. 8) is **RESERVED**. The Court directs Fitzmorris to file a supplementary memorandum, no later than thirty (30) days from entry of this order, explaining why he is entitled to all the damages he seeks. The Court may, if necessary, conduct a hearing on damages following Fitzmorris's submission of his supplementary memorandum.

2. The Clerk of the Court is directed to mail a copy of this order to AMT's registered agent at the address below:

> Mr. Joseph F. Leo
> 666 Grand Ave., Suite 2000
> Des Moines, IA 50309

DATED: November 07, 2024

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge