UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT FITZMORRIS, an Idaho resident,<br><br>　　Plaintiff,<br><br>　　v.<br><br>AG MANUFACTURING & TECHNOLOGY, INC., an Iowa for-profit corporation,<br><br>　　Defendant. | Case No. 3:24-cv-00196-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Plaintiff Scott Fitzmorris's Supplementary Memorandum (Dkt. 11), in support of his previously filed Motion for Entry of Default Judgment against Defendant AG Manufacturing & Technology, Inc. ("AMT"). (Dkt. 8). AMT has not appeared in this case and did not file a response to Fitzmorris's motions. Because oral argument would not sufficiently aid the Court's decision-making process, the Court decides the motion based on the record and without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral arguments."). For the reasons below, the Court grants Fitzmorris's Motion for Entry of Default Judgment.

I.　**BACKGROUND**

The Court incorporates by reference the case's factual background summarized in the Court's November 7, 2025, order. (Dkt. 10 at pp. 1-3). On July 29, 2024, Fitzmorris moved under

Rule 55(b)(2) of the Federal Rules of Civil Procedure for a default judgment of $339,143.77. (Dkt. 8 at pp. 1-2). Fitzmorris claims purchase price damages are $20,357.00 but requests $339,143.77 in total compensatory damages. (Dkt. 8-5 at pp. 3-4). Fitzmorris's alleged damages include: $20,357.00 for the purchase price of AMT's Intellidrive system (the "System"); $26,520.50 for rental costs for seeding in Spring 2023; $13,810.00 in labor costs for making the System work; $11,317.60 for fertilizer application in Fall 2023; $7,216.00 in additional equipment rentals; $18,399.92 for extra work for seeding in Fall 2023; and $48,364.75 in costs to replace the System. (*Id.*). Additionally, Fitzmorris requests $193,158.00 in lost crop damages. (Dkt. 8-5 at p. 4). In support of his crop damages, Fitzmorris submits the declaration and expert report of a certified professional agronomist, Gary W. Osteen, who opines that the System's delayed delivery caused Fitzmorris's crop losses and that loss was $193,158.00. (Dkt. 8-3 at ¶ 3, pp. 2-3). Fitzmorris reserves his request for costs and attorney fees for a separate motion. (Dkt. 8-5 at p. 13).

On November 7, 2024, the Court issued an order responding to Fitzmorris's Motion for Default Judgment. (Dkt. 10). The Court concluded that it had subject matter jurisdiction and personal jurisdiction over Fitzmorris's claims; Fitzmorris complied with all procedural requirements to move for default judgment; and that most factors—prejudice to the plaintiff, merits of the claims and sufficiency of the complaint, possibility of a dispute concerning material facts, excusable neglect, and favoring decisions on the merits—supported Fitzmorris's motion for a default judgment. (*Id.* at pp. 6-12). The Court, however, could not determine whether Fitzmorris's claimed damages were proportional to AMT's alleged conduct. (*Id.* at p. 10). The Court concluded that while Fitzmorris sufficiently documented his losses, he did not provide any legal authority

supporting his assertion he is entitled to consequential damages and lost profits. (*Id.* at p. 12). As a result, the Court was unable to determine Fitzmorris's damages. (*Id.*).

The Court directed Fitzmorris to file a supplemental brief addressing the sum of money at stake in the action and, specifically, why he is entitled to all damages he seeks. (*Id.* at p. 13). Fitzmorris filed a timely response to the Court's request.

## II.     LEGAL STANDARD

Whether to enter a default judgment is within the court's discretion. *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). As a part of this discretion, a court looks to several factors outlined in *Eitel v. McCool* (hereinafter "*Eitel* factors"), including (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim and the sufficiency of the complaint;[1] (3) the sum of money at stake in the action; (4) the possibility of a dispute concerning material facts; (5) whether the default was due to excusable neglect; and (6) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). Because the Court previously concluded five of these six *Eitel* factors support Fitzmorris's motion for default judgment (Dkt. 10), the Court addresses only one outstanding factor: the sum of money at stake in the action.

A court considering a motion for default judgment accepts all factual allegations in the complaint as true, except those relating to the amount of damages. *TeleVideo Sys., Inc. v.*

---

[1] The Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986), listed the "merits of the plaintiff's substantive claim" and the "sufficiency of the complaint" as two separate factors, though district courts usually analyze these factors together because of the factors' relatedness. *See PepsiCo, Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1175-76 (C.D. Cal. 2002).

*Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citation omitted). A court may conduct a hearing before entering a default judgment but is not required to do so if the record reveals no issue of material fact. *Kashin v. Kent*, 457 F.3d 1033, 1043 (9th Cir. 2006).

### III.   ANALYSIS

A.   **Amount of Money at Stake**

A court has discretion to review a plaintiff's claim for damages pursuant to a motion for default judgment. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) ("The general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."). Upon weighing the sum of money at stake, a court considers whether "the recovery sought is proportional to the harm caused by [the] defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010) (citation omitted) (addressing the "sum of money at stake" factor under *Eitel*); *see PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002) (addressing the need to "consider the amount of money at stake in relation to the seriousness of Defendant's conduct").

Fitzmorris claims $339,143.77 in total compensatory damages. (Dkt. 8-5 at p. 4). Relatively large amounts of damages generally weigh against default judgment. *See Berkley Ins. Co. v. Pilot W. Corp.*, No. 1:16-CV-00178-BLW, 2016 WL 7015613, at *2 (D. Idaho Nov. 30, 2016). This alone, however, does not preclude default judgment. *See id.* (granting default judgment, in part, despite the large sum sought by plaintiff). Fitzmorris explains that purchase price damages, cover damages, consequential damages, and crop loss damages all correlate to AMT's failure to provide farm equipment that conformed to AMT's representations. (Dkt. 8-5 at

pp. 8-9). As addressed below, Fitzmorris's reliance on AMT spurred a years-long series of expenses, all of which relate to AMT's initial breach of its contract with Fitzmorris. The Court therefore concludes the $339,143.77 in compensatory damages is proportional to the seriousness of AMT's alleged conduct. Accordingly, on examination of this factor and all other *Eitel* factors previously analyzed by this Court (Dkt. 10), the Court finds that default judgment against AMT is appropriate.

**B.    Damages**

Where "the amount claimed is a liquidated sum or capable of mathematical calculation," a district court may determine the amount of damages without a hearing. *Davis v. Fendler*, 650 F.2d 1154, 1161 (9th Cir. 1981). The party moving for default should explain how both law and evidence support an award of damages. *See Yoon Chul Yoo v. Arnold*, 615 Fed. App'x 868, 870 (9th Cir. 2015); *Weese v. Lusso Auto LLC*, No. CV-22-01564-PHX-SPL, 2023 WL 244501, at *6 (D. Ariz. Jan. 18, 2023) ("Courts may rely on declarations submitted by the plaintiff in determining appropriate damages."). Here, we see no factual issues that warrant a hearing on damages. For the below reasons, the Court finds that Fitzmorris is entitled to an award of $339,143.77 in compensatory damages because Fitzmorris has provided both law and evidence justifying his award.

   **1.    Purchase Price Damages**

Fitzmorris claims purchase price damages of $26,520.50 because he paid AMT this sum to purchase the System, which he expected would conform with AMT's express and implied warranties. (Dkt. 8-5 at p. 3). Under Idaho Code § 28-2-711, a buyer's remedies in rejecting goods include "so much of the price as has been paid." As the Court has accepted as true Fitzmorris's

allegations that AMT breached an enforceable, express contract claim (Dkt. 10 at p. 9), the Court finds that Fitzmorris is entitled to $20,357 in purchase price damages.

### 2. Cover Damages

Fitzmorris claims cover damages of $48,364.75 to manufacture his own metering system. (Dkt. 8-5 at pp. 3-4). Idaho Code §§ 28-2-711 addresses the "cover" remedy available to a buyer following a seller's breach:

> (1) Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance then with respect to any goods involved, and with respect to the whole if the breach goes to the whole contract (section 28-2-612), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid
> > (a) "cover" and have damages under the next section as to all the goods affected whether or not they have been identified to the contract . . . .

Idaho Code § 28-2-712 explains the concept of "cover" and the appropriate measure of damages:

> (1) After a breach within the preceding section the buyer may "cover" by making in good faith and without unreasonable delay any reasonable purchase of or contract to purchase goods in substitution for those due from the seller.
> (2) The buyer may recover from the seller as damages the difference between the cost of cover and the contract price together with any incidental or consequential damages as hereinafter defined (section 28-2-715), but less expenses saved in consequence of the seller's breach.

Fitzmorris states that he incurred replacement machine costs of $48,364.75 to manufacture his own metering system, at "a cost below that which would have been required on the open market," because AMT failed to provide him with a working metering system. (Dkt. 8-5 at pp. 4, 11-12). The record indicates Fitzmorris acted in good faith to mitigate his damages, and that he did not delay seeking a replacement metering system. (Dkts. 8-1, 8-2). Accordingly, the Court finds that Fitzmorris is entitled to $48,364.75 in cover damages.

### 3. Consequential Damages

Fitzmorris also claims consequential damages stemming from the System's inoperability. The UCC defines "consequential damages" as "any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise." I.C. §§ 28-2-712(2), 28-2-715(2). To establish consequential damages under the UCC, a buyer must show (1) "losses . . . resulted from needs which the seller knew or had reason to know at the time of contracting," and (2) losses "could not have been reasonably prevented by cover or otherwise." *Nezperce Storage Co. v. Zenner*, 670 P.2d 871, 874 (Idaho 1983).

Here, Fitzmorris alleges he paid $26,520 for another farmer to perform seeding in Spring 2023 because Fitzmorris had no functional metering system; $13,810 in labor costs in attempting to make the System work; $11,317.60 for CHS Primeland to perform fertilizing in Fall 2023 because Fitzmorris had no functional metering system; and $7,216 for an equipment rental and $18,399.92 for extra work related to Fall 2023 seeding damages because Fitzmorris had no functional metering system. (Dkt. 8-5 at pp. 3-4). Fitzmorris submits an affidavit from his employee, Brandon Selden, in which he explains how the employee told an AMT representative, Rusty Kordick, that Fitzmorris was going to use the System to complete his Spring planting. (Dkt. 11-1 at p. 2). When AMT still had not supplied parts to fix the System, Mr. Selden told Mr. Kordick that Fitzmorris needed the System to conduct Fall planting. (*Id.* at pp. 2-3). Despite repeated assurances from AMT's employees that a fix was "in process," Fitzmorris never received a working system. (*Id.* at p. 3). Fitzmorris claims that he had no choice but to focus on fall seeding and mitigate his damages. (Dkt. 1 at ¶¶ 3.22-3.31, 3.34-3.35). The Court concludes AMT had

actual knowledge of the foreseeable damages that would flow from AMT's breach because of Mr. Kordick's representations to Mr. Selden regarding the System's intended use, and Fitzmorris had no other opportunities to cover these losses because AMT told him a resolution was forthcoming. Accordingly, the Court finds that Fitzmorris is entitled to $77,264.02 in consequential damages.

### 4.     Lost Crop Damages

Fitzmorris also claims consequential damages related to alleged lost crop yields, which totaled $193,158.00 in damages. (Dkt. 8-5 at p. 4). The buyer may have a right to loss of profits when cover is not possible. *S. Idaho Pipe & Steel Co. v. Cal-Cut Pipe & Supply, Inc.*, 567 P.2d 1246, 1256 (1977). More specifically, a buyer alleging loss crop yields as consequential damages must show the losses resulted from needs that the seller knew or had reason to know at the time of contracting, and that the buyer could not have reasonably prevented them by cover or otherwise. *Nezperce Storage Co.*, 670 P.2d at 874.

Here, Fitzmorris submits the declaration and expert report of a certified professional agronomist, Gary W. Osteen, who opines that the System's delayed delivery caused Fitzmorris's crop losses and that loss was $193,158.00. (Dkt. 8-3 at ¶ 3, pp. 2-3). As addressed above, the record shows that AMT was aware or had reason to know Fitzmorris intended to use the System for seeding operations. (Dkt. 11-1 at pp. 2-3). Thus, AMT should have known that without a functioning System, Fitzmorris was likely to experience a drop in crop yields. Nothing in the record suggests cover was possible because an AMT representative advised Fitzmorris they would send additional replacement parts, but Fitzmorris never received them. (Dkt. 1 at ¶ 3.30). Accordingly, the Court finds that Fitzmorris is entitled to $193,158.00 in crop loss damages.

## IV.   ORDER

**IT IS ORDERED that:**

1. Fitzmorris's Motion for Default Judgment (Dkt. 8) is **GRANTED**.

2. Fitzmorris's counsel shall submit a separate motion for fees and costs with the required documentation within fourteen days of the issuance of this order.

3. A separate judgment conforming to this Court's Order shall be entered once a separate motion for fees and costs has been filed with the Court.

4. The Clerk of the Court is directed to mail a copy of this order to AMT's registered agent at the address below:

    Mr. Joseph F. Leo
    666 Grand Ave., Suite 2000
    Des Moines, IA 50309

DATED: April 16, 2025

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge